R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348

Attorneys for Defendant Annie International Inc.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWIST IT UP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANNIE INTERNATIONAL, INC., a Pennsylvania corporation and DOES 1- 10,<br><br>Defendants. | **Case No: 8:24-cv-00736-DMG-ADS**<br><br>**DEFENDANT ANNIE INT'L, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE CORRECTIONS TO PLAINTIFF'S FRCP 30(b)(6) DEPOSITION TRANSCRIPT**<br><br>**Date:** June 27, 2025<br>**Time:** 3:00 p.m.<br>**Place:**<br>Courtroom 8C, 8th Floor<br>350 West 1st Street,<br>Los Angeles, CA, 90012<br><br>**Hon. Dolly M. Gee**<br>**United States District Judge** |

1  Pursuant to Federal Rule of Civil Procedure 56(a), Defendant Annie
2  International Inc. ("Annie") hereby moves to strike corrections submitted by Plaintiff
3  Twist It Up, Inc. ("Twist") to its FRCP 30(b)(6) deposition transcript.

**I.    INTRODUCTION**

On February 6, 2026, Annie took the deposition of Twist, which designated Mr. Noel Durity as its corporate representative pursuant to FRCP 30(b)(6). (Declaration of R. Joseph Trojan ("Trojan Decl."), Ex. 1).

Subsequently on April 17, 2025, Mr. Durity submitted corrections to his transcript pursuant to FRCP 30(e). (Trojan Decl., Ex. 2.) Some of these corrections relate to a critical issue in the case: i.e., whether Mr. Durity committed fraud on the Patent Office when he prosecuted the patents at issue by not disclosing material prior art. Specifically, the asserted patents claim a hair twisting pick comb for styling African-American hair, which is essentially a miniaturized tennis racket. In the deposition, Mr. Durity (the named inventor of the patents) testified that using tennis rackets to twist hair was "common" in the African-American community. (Trojan Decl., Ex. 1: Durity Depo. at 41:21-24.) This is critically important because the Patent Examiner rejected Mr. Durity's patent application based upon a tennis racket patent. To overcome the Examiner's use of a tennis racket patent, Mr. Durity falsely argued that "African Americans are not known to purchase, use, implement tennis rackets . . . as hair styling tools." (Trojan Decl., Ex. 4: O/A Resp. at pp. 7-8.) Mr. Durity knew that was not true since he used a tennis racket himself as a hair styling tool before he filed for his patent. (Trojan Decl., Ex. 3: ROG 6.) Mr. Durity's deposition testimony is critical because it goes to the heart of the inequitable conduct issue in the case.

After the deposition, Plaintiff no doubt recognized that Mr. Durity's testimony would sink its patent case, so Plaintiff tried to make wholesale changes to his testimony. These changes are a clear violation of FRCP 30(e) as the changes on their face seek to expand on and introduce contradictory testimony. Thus, the changes

1  must be stricken from the record because Rule 30(e) "does not properly include
2  changes offered solely to create a material factual dispute in a tactical attempt to
3  evade an unfavorable summary judgment" *Hambleton Bros. Lumber Co. v. Balkin*
4  *Enterprises, Inc.*, 397 F.3d 1217, 1225-6 (9th Cir. 2005).

## II. BRIEF STATEMENT OF FACTS

Twist proposed changes to the deposition are summarized as follows:

| Original Transcript | Correction | Reason |
|---|---|---|
| Q.  So have you ever seen someone use a tennis rack --<br>A.  Yeah, it's common.<br>Q.  So using a tennis --<br>A.  It's how I created the comb.<br><br>Trojan Decl., Ex. 1 at 21:21-24[1]<br><br>A  When woven.  Have you tried to bend nylon strings of a tennis racket?  They don't bend.<br><br>Q  Right.  And the idea of the nylon came from the tennis racket; right?<br><br>A  Correct.  My entire idea came from me using a tennis racket on my head for four years taking it to Brazil.  And this is all -- you can -- this is all -- me taking it to Brazil, | 'Common,' as used here means that I personally was aware of a few individuals, including myself, who had used a tennis racket to twist their hair prior to 2016, and it was something I had done a few times personally. However, it was not a widely adopted or culturally prevalent practice among African-Americans in general and it was not common for African-Americans to purchase tennis rackets as a hair styling tool. | Clarifying a general statement |

---

[1] Mr. Durity does not actually request the correction of this portion of his deposition and the proposed change is clearly contrary to his own testimony.

| | | |
|---|---|---|
| and I lost my tennis racket.<br><br>Trojan Decl., Ex. 1 at 102:23 – 103:4 | | |
| Q  And the stainless steel is so valuable because it's highly functional in order to be used with African-American hair;  right?<br><br>A  It has nothing to do with the function.  It has to do with the way that it looks.<br><br>Trojan Decl., Ex. 1 at 94:10–11 | The stainless steel grid was selected as a design choice to give the Twist It Up comb a distinctive and premium look. It was not selected for any superior hair twisting function compared to other materials like nylon or plastic | Clarifying a general statement |
| Q  And the stainless steel is so valuable because it's highly functional in order to be used with African-American hair;  right?<br><br>A  It has nothing to do with the function.  It has to do with the way that it looks.<br><br>Trojan Decl., Ex. 1 at 94:8–10[2] | I chose stainless steel for its distinct visual appearance and premium aesthetic, which aligned with the brand image I wanted for Twist It Up. It was a design choice—not based on ease of manufacturing or functional advantage | Clarifying a general statement |
| So as of right now, the only thing that is my trade  dress would be the stainless steel comb and that circular shape and that packaging exposes the stainless steel comb, and that would be my | The stainless steel comb and circular frame were chosen to give Twist It Up its unique visual identity. The stainless steel grid is a recognizable visual element of the brand— | Clarifying a general statement |

---

[2] This citation overlaps with the previous citation.

| | |
|---|---|
| trade dress as of right now, currently, year-to-date, yes.<br><br>Q  Okay.<br><br>A  Because that's all I sell and that's all that's – I don't sell a nylon comb. I don't still a plastic comb. However, I have the ability to do so because my patent says nylon strings or similar-situated material. But I have yet to do so.<br><br>Trojan Decl., Ex. 1 at 108:20–109:4 | not chosen for any functional advantage |

The parties met and conferred concerning the submitted changes on April 30, 2025, but could not agree on the permissibility of the changes. (Trojan Decl., ¶ 6.)

### III.  The Deposition Corrections Exceed the Permissible Scope of Rule 30(e)

Federal Rule of Civil Procedure 30(e) permits a deponent to "review the transcript or recording" and, "if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them." However, courts have repeatedly held that Rule 30(e) is not a license for a deponent to materially alter sworn testimony in an effort to evade adverse consequences or manufacture a factual dispute. The Ninth Circuit has been explicit: "Rule 30(e) is to be used for corrective, and not contradictory, changes" *Hambleton Bros. Lumber Co.*, 397 F.3d at 1226.

The corrections in this case are impermissible "contradictory" changes as described in *Hambleton Bros.* The changes do not clarify minor inaccuracies or transcription errors, but rather substantially revise and contradict the original

testimony. For example, Mr. Durity originally testified that using tennis rackets to twist hair was "common":

> Q. So have you ever seen someone use a tennis rack --
>
> A. Yeah, it's common.
>
> Q. So using a tennis --
>
> A. It's how I created the comb.

(Trojan Decl., Ex. 1 at 21:21-24.) Yet, Plaintiff now attempts to recast Mr. Durity's testimony about the common use of tennis rackets in the African-American community by claiming that Mr. Durity only had limited cultural awareness of such practices among African-Americans:

> 'Common,' as used here means that I personally was aware of a few individuals, including myself, who had used a tennis racket to twist their hair prior to 2016, and it was something I had done a few times personally. However, it was not a widely adopted or culturally prevalent practice among African-Americans in general and it was not common for African-Americans to purchase tennis rackets as a hair styling tool.

This flips Mr. Durity's original testimony on its head by completely changing the meaning of the word "common" as used by Mr. Durity in the deposition. In fact, Mr. Durity appears to cite the incorrect portion of his transcript (Trojan Decl., Ex. 1 at 102:23 – 103:4) to minimize the blatant contradiction. (Trojan Decl., Ex. 2.)

Further, Mr. Durity's later "corrections" are also attempts to revise his prior admissions that the metal strings of Twist's product was previously a functional element. For example, Mr. Durity testified:

> Q. Well, in this particular claim element, which is the portion that defines the grid, what you're calling the grid earlier, is there anything in that portion of the claim that requires that the grid be woven?

-5-

| | |
|---|---|
| A. | Movable. |
| Q. | **Movable. So these strings that are made out of metal, these are movable?** |
| A. | **When you put it in your hair, yes.** |
| Q. | And what -- because they flex? |
| A. | **Yes. Not only flex, but they don't bend under pressure. And the -- this part, when I initially designed it, if you look at my comb, it was actually made out of nylon sheets.** So it was able to move and expand.  So when you have short hair, you were able to twist your hair; and when you have long hair, the strings would move and you would be able to expand and twist longer hair. My initial invention was with nylon strings. |

(Trojan Decl., Ex. 1 at 41:5-20 (emphasis added).)

In attempt to contradict the testimony above, Mr. Durity's "corrections" contradict the testimony above:

1. The stainless steel grid was selected as a design choice to give the Twist It Up comb a distinctive and premium look. It was not selected for any superior hair twisting function compared to other materials like nylon or plastic. (Correcting Trojan Decl., Ex. 1 at 94:10–11.)
2. I chose stainless steel for its distinct visual appearance and premium aesthetic, which aligned with the brand image I wanted for Twist It Up. It was a design choice—not based on ease of manufacturing or functional advantage. (Correcting Trojan Decl., Ex. 1 at 94:8–10.)
3. The stainless steel comb and circular frame were chosen to give Twist It Up its unique visual identity. The stainless steel grid is a recognizable visual element of the brand—not chosen for any functional advantage. (Correcting Trojan Decl., Ex. 1 at 108:20–109:4.)

-6-

These changes are not clarifications to his testimony because they are clearly designed as a substantive recharacterization of the metal strings as a "distinctive" feature to negate his prior admission regarding the functionality of the metal strings. The original testimony is critical to the trade dress claims because functional elements of a product are not protectable as trade dress. See *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir.1987); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987)). Thus, Mr. Durity is directly undermining prior factual admissions and attempting to recast his testimony to strengthen the alleged distinctiveness of Twist's trade dress.

As the Ninth Circuit emphasized in *Hambleton Bros.*, such "purposeful rewrites tailored to manufacture an issue of material fact" undermine the integrity of the deposition process and constitute an abuse of Rule 30(e). Courts may—and should—strike corrections that serve only to contradict earlier sworn testimony without plausible claims of transcription error or legitimate clarification.

Accordingly, the Court should strike the proposed deposition corrections in their entirety under the clear guidance of *Hambleton Bros.*, which held that Rule 30(e) "does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment" (*Id*. at 1225–26)

### IV.   CONCLUSION

For the foregoing reasons, the Court should GRANT the motion to strike.

Respectfully submitted,

By:

Dated: May 23, 2025

/s/R. Joseph Trojan
R. Joseph Trojan
Dylan C. Dang
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325

Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348
Attorneys for Defendant
Annie International, Inc.

-8-

# CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, I filed the foregoing with the Court's CM/ECF system, which will cause it to be served electronically upon all counsel of record.

/s/R. Joseph Trojan
R. Joseph Trojan