R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
Alexander D. Mazzeo, CA Bar No. 360,429
mazzeo@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348

Attorneys for Defendant Annie International Inc.

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWIST IT UP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANNIE INTERNATIONAL, INC., a Pennsylvania corporation and DOES 1- 10,<br><br>Defendants. | **Case No: 8:24-cv-00736-DMG-ADS**<br><br>**DEFENDANT ANNIE INT'L, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE CORRECTIONS TO PLAINTIFF'S FRCP 30(b)(6) DEPOSITION TRANSCRIPT**<br><br>**Date:** June 27, 2025<br>**Time:** 3:00 p.m.<br>**Place:**<br>Courtroom 8C, 8th Floor<br>350 West 1st Street,<br>Los Angeles, CA, 90012<br><br>**Hon. Dolly M. Gee**<br>**United States District Judge** |

Pursuant to Federal Rule of Civil Procedure 30(e), Defendant Annie International Inc. ("Annie") hereby submits this reply to Plaintiff Twist It Up, Inc.'s ("Twist") opposition (Dkt. 36) to Annie's motion to strike corrections submitted by Twist to its FRCP 30(b)(6) deposition transcript (Dkt. 29.)

## I. INTRODUCTION

Plaintiff Twist It Up, Inc.'s Opposition confirms precisely why its deposition "corrections" must be stricken. Plaintiff's changes to its FRCP 30(b)(6) designee's testimony impermissibly contradict prior sworn testimony on material issues—namely, the prior art's impact on patent validity and the functionality of the alleged trade dress. Plaintiff attempts to recharacterize the errata as just "clarifications," but calling a complete reversal of testimony a "clarification" does not make it so.

Additionally, viewing these changes in context of Annie's motion for summary judgment, these revisions are clearly designed to manufacture factual disputes after unfavorable testimony damaged Plaintiff's case. This is precisely the type of substantive rewriting of testimony that the Ninth Circuit forbids under *Hambleton Bros Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217 (9th Cir. 2005).

Even if the changes were permitted under Rule 30(e), which they are not, Plaintiff's opposition is legally flawed because it relies on non-existent case authority. For those legal citations that are correct, Plaintiff misrepresents several case findings to support its untenable positions, which undermines the credibility of the entire opposition. Accordingly, the Court should strike the errata.

## II. ARGUMENT

### A. Plaintiff's Cited Cases Do Not Support its Contradictory Changes

It appears that Plaintiff relied upon ChatGPT to write the Opposition without checking to see if it was engaged in AI hallucinations. In a now famous case in which AI was used to write the brief, a New York District Court issued sanctions

-1-

because "[r]espondents advocated for the fake cases and legal arguments contained in the Affirmation in Opposition after being informed by their adversary's submission that their citations were non-existent and . . . the Court had not been able to locate the fake cases…". *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 464 (S.D.N.Y. 2023) (internal citations omitted).

Here, Plaintiff's opposition cites *James v. Claussen*, 2022 WL 1120273, at *3 (C.D. Cal. Apr. 14, 2022) for the proposition that courts "regularly allow clarifications to testimony that, though substantive, help clarify imprecise phrasing." (Dkt. 36 at 2:17-22). Searching Westlaw for "James v. Claussen" returns no results. Searching Westlaw for "2022 WL 1120273" returns a different case: *Armstrong v. The State of Texas* in which Appellant was indicted for manslaughter, and the Court addressed whether "a rational jury could have found that Appellant ought to have been aware that forcibly shoving an intoxicated Brittani, while she was standing on a concrete driveway, created a substantial and unjustifiable risk of death." 2022 WL 1120273, at *8. This case has nothing to do with striking corrections in a deposition.

Plaintiff also cites to *Lewis v. CCPOA*, 2009 WL 890585, at *4 (E.D. Cal. Mar. 31, 2009). A search in Westlaw for "2009 WL 890585" turns up the case *Gupta v. Sears, Roebuck & Co.*, which addresses a motion for summary judgment concerning employment discrimination, but makes no mention of FRCP Rule 30(e) or a motion to strike. *See* 2009 WL 890585 (W.D. Pa. Mar. 26, 2009).

Perhaps Plaintiff instead intended to cite *Lewis v. The CCPOA Benefit Tr. Fund*, No. C-08-03228-VRW DMR, 2010 WL 3398521, (N.D. Cal. Aug. 27, 2010), which was before a different court in a different year than the imaginary case cited by Plaintiff. Giving Plaintiff the benefit of the doubt, this case affirms Defendant's position that "Rule 30(e) may only be used for corrective, and not contradictory, changes." 2010 WL 3398521 at *2-4 (citing *Hambleton Bros* 397 F.3d at 1225-26.) Even though the Court in *Lewis* found the deposition changes at issue did not amount

to a "sham" it still found that 24 of the 38 submitted changes amounted to a fundamental change and struck all 24 contradictory changes. *Id*. at *3-4.

Plaintiff also relies on *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 103 (2d Cir. 1997) for the same proposition as *Lewis*. However, this case is concerned with whether Rule 30(e) "allows the final changes to a deposition transcript to become the actual record," and whether Podell was "entitled to have his altered answers take the place of the original ones," ***not*** whether such alterations were contradictory or permissible in the first place. *See Id.* at 103.[1]

Finally, Plaintiff relies on *Hernandez v. Polanco Enters., Inc.,* 19 F. Supp. 3d 918, 931 (N.D. Cal. 2013) for the proposition that "unless the corrections were submitted in bad faith or solely to defeat summary judgment, they should remain part of the record." (Dkt. 36 at 3:5-8.) While the citation appears accurate, the case itself does not stand for Plaintiff's proposition. Instead, *Hernandez* concerns a "[f]ailure to supplement [discovery that] triggers the sanctions provisions of Rule 37(c)." 19 F. Supp. 3d at 933.

The only way that counsel could get the case law so wrong is if the Opposition was written by AI without reviewing the authorities cited by AI for accuracy. Citing to non-existent cases and accepted AI's seriously flawed interpretation of other cases is simply not permitted. *Mata*, *supra*, 678 F. Supp. 3d at 464; *see also*, *Pierce v. Com. Warehouse*, 142 F.R.D. 687, 690 (M.D. Fla. 1992) ("What an attorney cannot do is to mislead the court by contending that his argument is supported by existing law in the sense that the issue has been decided when that is not true."). That alone should be reason to grant the motion.

---

[1] Indeed, the Second Circuit affirmed the District Court's grant of summary judgment finding that Podell's effort to retrieve the situation by scratching out and recanting his original testimony does not weigh enough in the balance to create an issue of fact for a jury. *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997).

### B. Plaintiff's Opposition Cannot Overcome Binding Ninth Circuit Precedent

Rule 30(e) only allows corrections that clarify what a witness meant to say when their original testimony was ambiguous or unclear. *Hambleton Bros*, 397 F.3d at 1225 ("The Rule cannot be interpreted to allow one to alter what was said under oath.") (internal citation omitted). Here, Mr. Durity's original testimony concerning whether it was common for individuals to use a tennis racket as a hair styling tool was unequivocal:

> Q. So have you ever seen someone use a tennis rack –
>
> A. Yeah, it's common.
>
> Q. So using a tennis --
>
> A. It's how I created the comb.

(Dkt. 29-4 at 41:21-24.)

This exchange contains no ambiguity requiring clarification. When asked if he had seen tennis racket use for hair styling, Mr. Durity *volunteered* that it was "common", not that he personally knew a few people who did it. Mr. Durity's follow-up statement that this common practice was "how [he] created the comb" reinforced his understanding that tennis racket use was widespread.

His proposed "correction" attempts to completely reverse this admission:

> 'Common,' as used here means that I personally was aware of a few individuals, including myself, who had used a tennis racket to twist their hair prior to 2016, and it was something I had done a few times personally. However, it was not a widely adopted or culturally prevalent practice among African-Americans in general and it was not common for African-Americans to purchase tennis rackets as a hair styling tool.

(Dkt. 29-5 at 174:4.)

-4-

This reversal is not clarification; it is contradiction that attempts to transform testimony that tennis racket use was "common" into testimony that it was rare and limited to "a few individuals" i.e., uncommon. No reasonable interpretation of the word "common" could encompass Plaintiff's corrected meaning.

Furthermore, this contradiction goes to the heart of Defendant's inequitable conduct defense. Mr. Durity's original testimony that tennis racket were commonly used as a hair styling tool contradicts representations made to the Patent Office denying such widespread use. (Dkt. 29-7 at p. 8.)  As briefed in Annie's pending motion for summary judgment, it appears Plaintiff is trying to manufacture a factual dispute through errata corrections, hoping to survive summary judgment by claiming Mr. Durity "really" meant the practice was *un*common. This is precisely the type of ex post facto revision that *Hambleton Bros*. prohibits. 397 F.3d at 1225-26.

Just as Plaintiff seeks to erase its damaging "common use" admission to salvage its patent claims, it similarly attempts to rewrite Mr. Durity's clear acknowledgments of functionality to rescue its trade dress claims.

Plaintiff's errata corrections improperly attempt to recast the choice to use stainless-steel strings as motivated solely by "premium aesthetic" and "brand image" considerations, explicitly disclaiming any superior hair twisting functionality. (Dkt. 29-5 at 5-7.) Yet, Mr. Durity's deposition testimony clearly articulates the functional benefit of the stainless-steel strings, including that (i) they are movable; (ii) they flex; and (iii) they do not bend under pressure. (Trojan Decl., Ex. 1 at 41:15-18.)

Moreover, Plaintiff's claims of pure aesthetic motivation are directly refuted by the existence of Plaintiff's utility patent. The Supreme Court has explicitly recognized that the existence of a utility patent is strong evidence that the features claimed therein are functional. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001).

### C. Plaintiff's Explanations for the Changes Are Unavailing

Finally, Plaintiff's explanation for the changes ring hollow given its failure to provide actual legal support. For example, Plaintiff contention that "each correction includes a legitimate explanatory reason" and that the errata reflect only "nuanced clarifications" is unavailing. (Dkt. 36 at 1.). This assertion is belied by the errata themselves. The corrections do not clarify ambiguous wording or transcription errors. Rather, they materially alter the factual narrative to mitigate admissions harmful to Plaintiff's trade dress and patent claims.

Additionally, Plaintiff further contends that Defendant may cross-examine Mr. Durity at trial. But Rule 30(e) exists precisely to prevent this type of bait-and-switch tactic—where a party changes testimony post-deposition and then leaves the opposing side to chase contradictions at trial. This rule was not designed to permit retroactive rehabilitation of testimony after strategic review. As the Tenth Circuit put it: "[a] deposition is not a take home examination." *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242.

Third, the availability of cross-examination does not cure the prejudice that flows from allowing improper errata corrections. If Plaintiff's corrections are allowed to stand, Defendant will be forced to address both the original testimony and the corrected versions, creating confusion and potentially misleading the jury about what Mr. Durity actually said under oath.

### III. CONCLUSION:

For the foregoing reasons, Defendant Annie International, Inc. respectfully requests that the Motion to Strike Plaintiff's deposition corrections be granted.

Respectfully submitted,

By:

Dated: June 13, 2025           /s/R. Joseph Trojan
                               R. Joseph Trojan

-6-

| | |
|---|---|
| 1 | Dylan C. Dang |
| 2 | TROJAN LAW OFFICES |
| 2 | 9250 Wilshire Blvd., Suite 325 |
| 3 | Beverly Hills, CA 90212 |
|   | Telephone: (310) 777-8399 |
| 4 | Facsimile: (310) 777-8348 |
| 5 | Attorneys for Defendant |
|   | Annie International, Inc. |